## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JASON BRUCE, CHRISTOPHER RUSSELL, and TYLER MCCONNELL | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.: 22-5280 |
| US EQUIPMENT LLC, and SIMON BRADLEY, individually, | ) ) ) | **JURY TRIAL DEMANDED** |
| | ) ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

Plaintiffs, Jason Bruce, Christopher Russell, and Tyler McConnell, through their attorneys, the Garfinkel Group, LLC, complain against US Equipment LLC, and Simon Bradley, individually, (collectively, the "Defendants") as follows: (1) Plaintiffs complain against Defendants for their collective failure to pay Plaintiffs their earned commissions in accordance with the parties' agreements and pursuant to the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA"); and (2) Plaintiff Jason Bruce complains against Defendants for their collective failure to pay his final paycheck in violation of the IWPCA, and in support thereof, Plaintiffs state:

### PARTIES

1.      Jason Bruce ("Bruce") is a former employee of Defendants.

2.      Bruce is domiciled and resides in Pleasant Hill, Iowa.

3.      Christopher Russell ("Russell") is a former employee of Defendants.

4.      Russell is domiciled and resides in Crane, Missouri.

5.      Tyler McConnell ("McConnell") is a former employee of Defendants.

6.      McConnell is domiciled and resides in Springfield, Missouri.

7.     Defendant US Equipment LLC ("US Equipment") is an Illinois based-for-profit limited liability company that supplies, through both rentals and sales, processing machinery and construction equipment, including, but not limited to, cone, jaw, and impact crushers, vibrating screeners, trommels and stacking conveyors.

8.     US Equipment rents and sells McCloskey, MDS, MEW and Trail King construction equipment and machinery to businesses in Illinois, Iowa, Missouri, Indiana, and Wisconsin.

9.     At all times relevant herein, Defendant Simon Bradley ("Bradley") was the Founder and Chief Executive Officer ("CEO") of US Equipment.

10.    At all relevant times herein and in his capacity as CEO and founder, Bradley oversaw the day-to-day operations of the company, had the ability to hire and fire personnel, and made significant personnel and financial decisions, including the payouts of commissions and wages.

11.    Notably, Bradley approved Plaintiffs' commission payments before submitting payroll.

## JURISDICTION & VENUE

12.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as it involves citizens of different states and the amount in controversy is in excess of $75,000.00.

13.    This Court is an appropriate venue pursuant to 28 U.S.C. § 1391(b)(1), (2) (venue generally).

## FACTUAL ALLEGATIONS

Plaintiffs' Offered Compensation and Hire

### Jason Bruce

14.    Defendants hired Bruce in approximately February 2021 as a Location Manager.

15.    As a location manager, Bruce was tasked with procuring rentals and sales of McCloskey construction equipment on behalf of the Defendants.

2

16.     Bradley, in his capacity as CEO and founder of US Equipment, verbally promised Bruce the following unequivocal and unambiguous compensation:

- a prorated salary equivalent to $70,000 per year if paid over a full year, for the first six months of employment;

- a base salary that decreased to $50,000 per year after six months of employment;

- a draw[1] of $8,500, spread out over Bruce's first six months of employment, against which his first six months' sales commissions would be offset;

- commissions of 4% of the gross value of all sales made on behalf of US Equipment;

- commission escalators, or an increase in the rate of his commission on a given sale to 50% of the value of any equipment sales that were made at a rate above the listing price; and;

- commissions of 4% on all equipment rentals.

**Christopher Russell**

17.     Defendants hired Russell in approximately March 2020 as an Equipment Salesman.

18.     As an equipment salesman, Russell was tasked with procuring rentals and sales of McCloskey equipment on behalf of the Defendants.

19.     Bradley, as CEO and founder, verbally promised Russell the following unequivocal and unambiguous compensation:

- a base salary of $60,000 per year;

---

[1] A "draw" against commission is a promise of a minimum payout. Companies implement draws against commissions to help sales representative ramp up or adapt to new business conditions.

3

- commissions on 4% on the gross value of all sales made on behalf of US Equipment;

- commission escalators, or an increase in the rate of his commission on a given sale to 50% of the value of any equipment sales that were made at a rate above the listing price; and

- commissions on 4% on all equipment rentals.

**Tyler McConnell**

20. Defendants hired McConnell in approximately July 2020 as an Aggregate Equipment Salesman.

21. As an aggregate equipment salesman, McConnell was tasked with both renting and selling McCloskey construction equipment to interested businesses on behalf of the Defendants.

22. Bradley, in his role as CEO and founder, verbally promised McConnell the following unequivocal and unambiguous compensation:

- a base salary of $40,000 per year;

- commissions on 4% on the gross value of all sales made on behalf of US Equipment;

- commission escalators, or an increase in the rate of his commission on a given sale to 50% of the value of any equipment sales that were made at a rate above the listing price; and

- commissions on 4% on all equipment rentals.

Vesting of Salary & Commission Payments

23. Defendants' sales practices were such that once the customer agreed to either purchase or rent certain equipment or machinery from US Equipment, the designated salesman

4

submitted the requisite paperwork, including the serial number for the item, customer name, sale price and sale terms to US Equipment's Vice President of Sales, Dale Bianco ("Bianco").

24. Upon receipt, Bianco sent the product information to Bradley for his final approval.

25. Once Bradley approved, Bianco input this information into either a sales agreement, sales order, or bill of sale. Bianco then sent the paperwork back to the designated salesman, to be sent to the customer for signature.

26. After the customer signed the sales documents, the designated salesman was responsible for sending it back to Bianco to input into the company's internal database.

27. Plaintiffs were eligible for the full commission earned on a given sale or rental once the conditions set forth in ¶¶ 23-26 were satisfied.

28. Plaintiffs' commissions became due and payable on the first pay period following the month in which the sale(s) was made.

29. On the day Plaintiffs were scheduled to be paid their earned commissions, Bradley routinely called each Plaintiff individually, stating, "You are going to be paid this much in commissions."

30. Additionally, Defendants agreed to pay Plaintiffs' salaries biweekly.

31. Plaintiffs accepted the terms of employment offered to them as set forth above.

Plaintiffs Fulfill their Employment Obligations

**Jason Bruce**

32. Between approximately February 2021 and July 2021, the period during which he provided sales services for the Defendants, Bruce excelled in his position, completing approximately twenty-two (22) sales.

33.     Based on the agreement between the parties, Bruce had earned, and was entitled to commissions on the following sales:[2]

- IEP1;

- IEP2;

- IEP3;

- CFP1;

- CFR1;

- FSP1;

- HSC1;

- IRR1;

- CIP1;

- CIP2;

- QIP1;

- ENR1;

- ENR2;

- ENR3;

- ERD1;

- DDR1;

- DDR2;

- DDR3;

- DGP1;

---

[2] Shorthand abbreviations are used to identify Plaintiffs earned and owed commissions in order to protect customer anonymity.

- CGP1;

- CMP1; and

- AR1.

34.     Bruce made sales on the projects set forth in ¶33 that earned commission amounts specified below, and which vested/came due on the following dates:

- IEP1 – $26,900.00 (March 3, 2021);

- IEP2 - $9,800.00 (March 3, 2021);

- IEP3 - $4,600.00 (August 8, 2021);

- CFP1 - $13,712.00 (September 1, 2021);

- CFR1 - $1,700.00 (April 28, 2021);

- FSP1 - $19,400.00 (September 1, 2021);

- HSC1 - $1,800.00 (June 2, 2021);

- IRR1 - $240.00 (August 1, 2021);

- CIP1 - $15,000.00 (June 17, 2021);

- CIP2 - $316.00 (March 31 2021);

- QIP1 - $21,600.00 (April 1, 2021);

- ENR1 - $1,440.00 (June 18, 2021);

- ENR2 - $600.00 (June 18, 2021);

- ENR3 - $240.00 (June 18, 2021);

- ERD1 - $200.00 (June 18, 2021);

- DDR1 - $400.00 (July 23, 2021);

- DDR2 - $400.00 (July 23, 2021);

- DDR3 - $400.00 (July 23, 2021);

- DGP1 - $199.08 (July 23, 2021);

- CGP1 - $27,360.00 (April 12, 2021);

- CMP1 - $200.00 (May 20, 2021); and

- AR1 - $680.00 (June 9, 2021).

35.     At all times relevant herein, Bruce satisfied all conditions in order for him to receive his earned and agreed to commissions on the projects set forth in ¶¶ 33-34.

36.     On April 2, 2021, Defendants paid Bruce $9,777.80 for commissions earned in connection with the following sales: IEP1, IEP2, and IEP3.

37.     On May 14, 2021, Defendants paid Bruce $8,915.86 for commissions earned in connection with the sales of CGP1 and CMP1.

38.     In total, Bruce was only paid $18,693.66 in commissions.

39.     However, based on the agreed to 4% on the gross value of all sales and rentals, and after applying Defendants' commissions payments set forth in ¶¶36-37, Bruce was entitled to $128,493.42, or the remainder of his earned and agreed to commissions, before even applying statutory interest penalties available under the IWPCA.

40.     Moreover, as set forth in ¶16, Bruce was entitled to 50% of the value of any sales that were made at a rate above the listing price.

41.     The list price for IEP1 was $360,000; Bruce sold IEP1 for $385,000.

42.     The sale price of $385,000 was approximately $25,000 more than the listing price.

43.     Accordingly, Bruce earned 50% of $25,000, totaling an additional $12,500.00 in connection with the sale of IEP1.

44.     Despite making the foregoing sales, Defendants' payments to Bruce outlined in ¶¶ 36-37 represent only a portion of Bruce's earned commissions.

45. Defendants failed to pay Bruce the entirety of his earned and agreed to commissions for the projects enumerated in ¶¶33-34.

46. In July 2021, Bruce resigned after Defendants failed to pay his agreed to and earned commissions.

47. At no point, between July 2021 and the present, was Bruce ever paid the full measure of sales commissions owed to him.

48. Defendants also failed to pay Bruce his final paycheck for the pay period July 18, 2021, until July 31, 2021, totaling approximately $3,346.15.

**Christopher Russell**

49. Throughout the duration of his employment with Defendants, Russell was responsible for at least seventeen (17) sales on behalf of the Defendants.

50. Based on the agreement between the parties, Russell was entitled to commissions on the following sales:

- GSW1;
- QHP1;
- TMP1;
- MLR1;
- MLR2;
- MLP1;
- MLP2;
- MLR3;
- MLR4;
- TRA1;

- MLP3;

- MLR3;

- MLP4;

- AER1;

- AER2;

- MLR5; and

- MLR6.

51.     Russell made sales on the projects set forth in ¶50 that earned commission amounts specified below and that became due on the following dates:

- GSW1 - $12,400.00 (May 1, 2021);

- QHP1 - $20,000.00 (June 1, 2021);

- TMP1 - $7,160.00 (September 1, 2021);

- MLR1 - $480.00 (December 20, 2021);

- MLR2 - $496.00 (December 1, 2021);

- MLP1 - $23,200.00 (December 1, 2020;

- MLP2 – $11,800.00 (December 1, 2020);

- MLR3 - $800 (December 1, 2020);

- MLR4 - $500 (December 1, 2020);

- TRA1 - $1,000.00 (February 1, 2021);

- MLP3 - $48,400 (June 21, 2021);

- MLR3 – $800.00 (May 1, 2021);

- MLP4 - $3,680.00 (July 1, 2021);

- AER1 - $320 (July 1, 2021);

- AER2 - $6,360.00 (July 1, 2021);

- MLR5 - $1,040.00 (July 1, 2021); and

- MLR6 – $560 (July 1, 2021).

52.     At all relevant times herein, Russell satisfied all conditions in order for him to receive his earned and agreed to commissions on the projects set forth in ¶¶50-51.

53.     Despite making the foregoing sales, Defendants failed to pay Russell the entirety of his earned and agreed to commissions for the projects enumerated in ¶¶50-51.

54.     Russell was owed, in total, $138,996.00. However, throughout the duration of his employment, Defendants only ever paid Russell $37,794.00 of his earned commissions.

55.     In September 2021, after Defendants failed to pay Russell the entirety of his agreed to and earned commissions, Russell resigned.

56.     Based on the agreed to 4% on the gross value of all sales and rentals and 50% of the value of any sales made at a rate above the listing price, and after accounting for the commission payment set forth in ¶54, Russell is entitled to commissions totaling approximately $101,202.00, before assessing statutory interest penalties under the IWPCA.

**Tyler McConnell**

57.     During his employment with Defendants, McConnell was responsible for approximately eight (8) sales on behalf of the Defendants.

58.     Based on the agreement between the parties, McConnell was entitled to commissions on the following sales:

- CP1;

- LR1;

- KG1;

- KG2;

11

- SC1;

- SC2;

- PM1; and

- EO1.

59.    McConnell made sales on the projects set forth in ¶58 that earned commission amounts specified below and that became due on the following dates:

- CP1 - $8,600 (December 1, 2020);

- LR1 - $560,00 (January 1, 2021);

- KG1 - $14,400 (March 1, 2021);

- KG2 - $4,040.00 (March 1, 2021) ;

- SC1 - $900 (March 1, 2021);

- SC2 - $4,700.00 (July 1, 2021);

- PM1 - $6,040.00 (December 1, 2020); and

- EO1 – $960.00 (May 1, 2021);

60.    At all relevant times herein, McConnell satisfied all conditions in order for him to receive his earned and agreed to commissions on the projects set forth in ¶¶58-59.

61.    Despite making the foregoing sales, Defendants failed to pay McConnell the entirety of his earned and agreed to commissions for the projects enumerated in ¶¶58-59.

62.    While employed by Defendants, McConnell was paid approximately $17,000 of his agreed to and earned commissions.

63.    On April 30, 2021, McConnell resigned after not being paid the entirety of his agreed to and earned commissions.

64.     Based on the agreed to 4% on the gross value of all sales and rentals, and after applying the commission payment in ¶62, McConnell is entitled to commissions totaling approximately $23,200.00 in commissions, before applying the available penalties under the IWPCA.

Plaintiffs are Entitled to all Earned Commissions pursuant to the IWPCA

65.     Plaintiffs' commissions constitute earned commissions, as defined under the IWPCA and applicable regulations, which set forth, in relevant part:

> A commission is the compensation for services performed pursuant to an employment contract or agreement between the two parties. In order to be entitled to receive compensation for a commission under the Act, the commission must be earned under the terms of the agreement or contract.
>
>> a) A separated employee has a right to an earned commission when the conditions regarding entitlement to the commission have been satisfied, notwithstanding the fact that, due to the employee's separation from employment, the sale or other transaction was consummated by the principal personally or through another agent.

Ill. Admin. Code tit. 56, § 300.510.

66.     Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee. 820 ILCS 115/5.

67.     As of September 1, 2021, Plaintiffs had procured sales on behalf of the Defendants for certain construction equipment and machinery, triggering their rights to the agreed to commissions.

68.     Pursuant to the parties' agreements, Plaintiffs earned commissions on certain contracts from December 1, 2020, to September 1, 2021.

69.     Plaintiffs were not paid the entirety of their earned commissions for certain commissions earned from December 1, 2020, to September 1, 2021, constituting both a breach of their respective employment agreements and the IWPCA.

70.     Defendants' commission policy specifies that commissions were due the month following the date of sale.

71.     Accordingly, pursuant to their respective agreements, Plaintiffs' commissions were due the month following the date of sale as set forth in ¶¶34, 51, and 59.

72.     Notwithstanding Defendants' policy specifying when commissions were to be paid out, in accordance with the IWPCA, Plaintiffs' commissions were due no later than the next regularly scheduled payday following their respective resignations.

73.     No limitations or discretion were afforded to the Defendants to retroactively alter the terms of Plaintiffs' compensation.

74.     Accordingly, Bruce is entitled to all commissions earned from February 2021 to July 2021, Russell is entitled to all commissions earned from March 2020 to September 30, 2021, and McConnell is entitled to all commissions earned from December 1, 2020, to May 1, 2021.

75.     At the time of their respective resignations, pursuant to their agreements with Defendants and the IWPCA, before assessing statutory interest penalties under the IWPCA, Plaintiffs were owed as follows:

- Bruce – $128,493.42.

- Russell – $101,202.00; and

- McConnell - $23,200.00.

Defendants Failed to Provide Plaintiffs with Written Agreements Setting Forth Their Compensation

76.     The IWPCA provides, in relevant part, "Employers shall notify employees, at the time of hiring, of the rate of pay and of the time and place of payment. Whenever possible such notification shall be in writing and shall be acknowledged by both parties." 820 ILCS 115/10.

77.     Defendants failed to provide Plaintiffs with a written agreement setting forth the terms of their compensation, in violation of the IWPCA.

<u>Defendants' Failure to pay Bruce Pursuant to the Parties' Agreement Violates the IWPCA</u>

78.     Defendant's failure to pay Bruce his final paycheck for the pay period July 18, 2021, to July 31, 2021, violates the IWPCA. 820 ILCS 115/2.

79.     The IWPCA provides, in relevant part, that "Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 Ill. Comp. Stat. 115/5.

80.     With respect to the IWPCA's mandate that employers pay their employees final compensation, the IWPCA defines "final compensation," in relevant part, as:

> Payments to separated employees shall be termed "final compensation" and shall be defined as **wages**, salaries…and any other compensation owed the employee by the employer pursuant to an employer contract or agreement between the two parties.

820 Ill. Comp. Stat. 115/2 (emphasis added).

81.     Bruce's employment ended on approximately July 31, 2021.

82.     Defendants failed to pay Bruce his final paycheck, which was due on July 31, 2021. The total wages due for his final pay is $3,346.15, before the assessment of the mandatory statutory interest penalties, provided for under the IWPCA.

83.     Defendants knew at the time of the cessation of Bruce's employment, that he was owed his final paycheck totaling approximately $3,346.15.

84.     Notwithstanding this knowledge and despite Bruce fulfilling his obligations and completing the work he agreed to undertake, Defendants made the decision not to pay Bruce his final paycheck.

85.     By refusing to pay Bruce's final paycheck, Defendants breached their agreement and violated the IWPCA.

15

**COUNT I**
**IWPCA – UNPAID FINAL COMPENSATION - EARNED COMMISSIONS**
**PLAINTIFF BRUCE**
**AGAINST DEFENDANT US EQUIPMENT**

86.     Paragraphs 1 though 85 are incorporated by reference.

87.     Bruce brings Count I under the IWPCA for unpaid commissions.

88.     The IWPCA requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation, including "earned commissions." 820 ILCS 115/2.

89.     Bruce was US Equipment's employee, and US Equipment was Bruce's employer, as defined under the IWPCA. 820 ILCS 115/2.

90.     A commission must be paid when services are performed pursuant to an agreement between the parties. 820 ILCS 115/2.

91.     As a separated employee, Bruce has a right to an earned commission when the conditions regarding the entitlement of the commission have been satisfied even if due to the employee's separation from employment, the sale or other transaction was completed by the principal or another agent. Ill. Admin. Code tit. 56 § 300.510.

92.     On July 31, 2021, Bruce resigned without being paid the entirety of his earned and agreed to commissions.

93.     Bruce earned commissions based on the sales he made on behalf of US Equipment.

94.     Bruce continued to work in accordance with US Equipment's commission structure up and until his resignation on July 31, 2021.

95.     Bruce performed his obligations to earn commissions on all sales he procured on behalf of US Equipment.

96.     US Equipment violated the IWPCA by failing to pay Bruce's earned commissions, as final compensation.

97.     As a direct result of US Equipment's violation of the IWPCA, Bruce was damaged in the form of being denied his final compensation.

**COUNT II**
**IWPCA – UNPAID FINAL COMPENSATION – COMMISSIONS**
**PLAINTIFF BRUCE**
**AGAINST DEFENDANT BRADLEY**

98.     Paragraphs 1 though 85 are incorporated by reference.

99.     Bruce brings Count II under the IWPCA for unpaid commissions.

100.    The IWPCA requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation, including "earned commissions." 820 ILCS 115/2.

101.    Bruce was US Equipment's employee and US Equipment was Bruce's employer, as defined under the IWPCA. 820 ILCS 115/2.

102.    A commission must be paid when services are performed pursuant to an agreement between the parties. 820 ILCS 115/2.

103.    As a separated employee, Bruce has a right to an earned commission when the conditions regarding the entitlement of the commission have been satisfied even if due to the employee's separation from employment, the sale or other transaction was completed by the principal or another agent. Ill. Admin. Code tit. 56 § 300.510.

104.    Decision makers, corporate officers, and agents who knowingly permit the violation of the IWPCA face individual liability for such violations. 820 ILCS 115/13.

105.    At all times relevant herein, Bradley was a "decision maker" as defined under the IWPCA. 820 ILCS 115/13.

106.    At all times relevant herein, as CEO and owner, Bradley made significant personnel and financial decisions, including payment of separated employees' earned commissions upon resignation.

17

107. On or about July 31, 2021, Bruce resigned without being paid the entirety of his earned and agreed to commissions.

108. Bruce earned commissions based on sales he procured on behalf of US Equipment.

109. Bruce continued to work in accordance with US Equipment's commission structure up and until his resignation on July 31, 2021.

110. Bruce performed his obligations to earn commissions on all sales he made on behalf of US Equipment.

111. Bradley knew that Bruce had earned commissions and took part in the decision to refuse to pay Bruce his earned commissions due at the time of his resignation.

112. Bradley knowingly and willfully violated the IWPCA by failing to pay Bruce's earned commissions as his final compensation.

113. As a direct result of Bradley's violation of the IWPCA, Bruce was damaged in the form of being denied his final compensation.

**COUNT III**
**IWPCA – UNPAID FINAL COMPENSATION – COMMISSIONS**
**PLAINTIFF RUSSELL**
**AGAINST DEFENDANT US EQUIPMENT**

114. Paragraphs 1 though 85 are incorporated by reference.

115. Russell brings Count III under the IWPCA for unpaid commissions.

116. The IWPCA requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation, including "earned commissions." 820 ILCS 115/2.

117. Russell was US Equipment's employee, and US Equipment was Russell's employer, as defined under the IWPCA. 820 ILCS 115/2.

118. A commission must be paid when services are performed pursuant to an agreement between the parties. 820 ILCS 115/2.

18

119. As a separated employee, Russell has a right to an earned commission when the conditions regarding the entitlement of the commission have been satisfied even if due to the employee's separation from employment, the sale or other transaction was completed by the principal or another agent. Ill. Admin. Code tit. 56 § 300.510.

120. Russell resigned on September 30, 2021, without payment of his full earned commissions.

121. Russell earned commissions based on the sales he made on behalf of US Equipment.

122. Russell continued to work in accordance with US Equipment's commission structure up and until his resignation on September 30, 2021.

123. Russell performed his obligations to earn commissions on all sales he procured on behalf of US Equipment.

124. US Equipment violated the IWPCA by failing to pay Russell's earned commissions, as final compensation.

125. As a direct result of US Equipment's violation of the IWPCA, Russell was damaged in the form of being denied his final compensation.

**COUNT IV**
**IWPCA – UNPAID FINAL COMPENSATION – COMMISSIONS**
**PLAINTIFF RUSSELL**
**AGAINST DEFENDANT BRADLEY**

126. Paragraphs 1 though 85 are incorporated by reference.

127. Russell brings Count IV under the IWPCA for unpaid commissions.

128. The IWPCA requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation, including "earned commissions." 820 ILCS 115/2.

129. Russell was US Equipment's employee and US Equipment was Russell's employer, as defined under the IWPCA. 820 ILCS 115/2.

130. A commission must be paid when services are performed pursuant to an agreement between the parties. 820 ILCS 115/2.

131. As a separated employee, Russell has a right to an earned commission when the conditions regarding the entitlement of the commission have been satisfied even if due to the employee's separation from employment, the sale or other transaction was completed by the principal or another agent. Ill. Admin. Code tit. 56 § 300.510.

132. Decision makers, corporate officers, and agents who knowingly permit the violation of the IWPCA face individual liability for such violations. 820 ILCS 115/13.

133. At all times relevant herein, Bradley was a "decision maker" as defined under the IWPCA. 820 ILCS 115/13.

134. At all times relevant herein, as CEO and owner, Bradley made significant personnel and financial decisions, including payment of separated employees' earned commissions upon resignation.

135. Russell resigned on September 30, 2021, without being fully paid out earned commissions.

136. Russell earned commissions based on sales he procured on behalf of US Equipment.

137. Russell continued to work in accordance with US Equipment's commission structure up and until his resignation on September 30, 2021.

138. Russell performed his obligations to earn commissions on all sales he made on behalf of US Equipment.

139. Bradley knew that Russell had earned commissions and took part in the decision to refuse to pay Russell his earned commissions due at the time of his resignation.

140. Bradley knowingly and willfully violated the IWPCA by failing to pay Russell's earned commissions as his final compensation.

141. As a direct result of Bradley's violation of the IWPCA, Russell was damaged in the form of being denied his final compensation.

**COUNT V**
**IWPCA – UNPAID FINAL COMPENSATION – COMMISSIONS**
**PLAINTIFF MCCONNELL**
**AGAINST DEFENDANT US EQUIPMENT**

142. Paragraphs 1 though 85 are incorporated by reference.

143. McConnell brings Count V under the IWPCA for unpaid commissions.

144. The IWPCA requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation, including "earned commissions." 820 ILCS 115/2.

145. McConnell was US Equipment's employee, and US Equipment was McConnell's employer, as defined under the IWPCA. 820 ILCS 115/2.

146. A commission must be paid when services are performed pursuant to an agreement between the parties. 820 ILCS 115/2.

147. As a separated employee, McConnell has a right to an earned commission when the conditions regarding the entitlement of the commission have been satisfied even if due to the employee's separation from employment, the sale or other transaction was completed by the principal or another agent. Ill. Admin. Code tit. 56 § 300.510.

148. McConnell resigned on May 1, 2021, without payment of his full earned commissions.

149. McConnell earned commissions based on the sales he made on behalf of US Equipment.

150. McConnell continued to work in accordance with US Equipment's commission structure up and until his resignation on May 1, 2021.

151. McConnell performed his obligations to earn commissions on all sales he procured on behalf of US Equipment.

152. US Equipment violated the IWPCA by failing to pay McConnell earned commissions, as final compensation.

153. As a direct result of US Equipment's violation of the IWPCA, McConnell was damaged in the form of being denied his final compensation.

## COUNT VI
## IWPCA – UNPAID FINAL COMPENSATION – COMMISSIONS
## PLAINTIFF MCCONNELL
## AGAINST DEFENDANT BRADLEY

154. Paragraphs 1 though 85 are incorporated by reference.

155. McConnell brings Count VI under the IWPCA for unpaid commissions.

156. The IWPCA requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation, including "earned commissions." 820 ILCS 115/2.

157. McConnell was US Equipment's employee and US Equipment was McConnell's employer, as defined under the IWPCA. 820 ILCS 115/2.

158. A commission must be paid when services are performed pursuant to an agreement between the parties. 820 ILCS 115/2.

159. As a separated employee, McConnell has a right to an earned commission when the conditions regarding the entitlement of the commission have been satisfied even if due to the employee's separation from employment, the sale or other transaction was completed by the principal or another agent. Ill. Admin. Code tit. 56 § 300.510.

160. Decision makers, corporate officers, and agents who knowingly permit the violation of the IWPCA face individual liability for such violations. 820 ILCS 115/13.

161.     At all times relevant herein, Bradley was a "decision maker" as defined under the IWPCA. 820 ILCS 115/13.

162.     At all times relevant herein, as CEO and owner, Bradley made significant personnel and financial decisions, including payment of separated employees' earned commissions upon resignation.

163.     Through no fault of his own, McConnell resigned on May 1, 2021, without being fully paid out earned commissions.

164.     McConnell earned commissions based on sales he procured on behalf of US Equipment.

165.     McConnell continued to work in accordance with US Equipment's commission structure up and until his resignation on May 1, 2021.

166.     McConnell performed his obligations to earn commissions on all sales he made on behalf of US Equipment.

167.     Bradley knew that McConnell had earned commissions and took part in the decision to refuse to pay McConnell his earned commissions due at the time of his resignation.

168.     Bradley knowingly and willfully violated the IWPCA by failing to pay McConnell's earned commissions as his final compensation.

169.     As a direct result of Bradley's violation of the IWPCA, McConnell was damaged in the form of being denied his final compensation.

**COUNT VII**
**IWPCA – UNPAID FINAL COMPENSATION - COMMISSIONS**
**PLAINTIFF BRUCE**
**AGAINST DEFENDANT US EQUIPMENT**

170.     Paragraphs 1 though 85 are incorporated by reference.

171.     Bruce brings Count VII under the IWPCA for unpaid commissions.

23

172.     The IWPCA requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation, including "earned commissions." 820 ILCS 115/2.

173.     Bruce was US Equipment's employee and US Equipment was Bruce's employer, as defined under the IWPCA. 820 ILCS 115/2.

174.     As set forth in ¶16, the parties agreed Bruce was entitled to 50% of the value of any sales that were made at a rate above the listing price.

175.     IEP1 was listed at $360,000 and sold by Bruce for $385,000.

176.     Accordingly, Bruce is entitled to $12,500 or 50% of $25,000, which represents the difference between the list price and sale price.

177.     Bruce performed his obligations to earn commissions on all sales he procured on behalf of US Equipment.

178.     US Equipment violated the IWPCA by failing to pay Bruce the entirety of his earned commissions, as final compensation.

179.     As a direct result of US Equipment's violation of the IWPCA, Bruce was damaged in the form of being denied his final compensation.

## COUNT VIII
## IWPCA – UNPAID FINAL COMPENSAITON - COMMISSIONS
## PLAINTIFF BRUCE
## AGAINST DEFENDANT BRADLEY

180.     Paragraphs 1 though 85 are incorporated by reference.

181.     Bruce brings Count VIII under the IWPCA for unpaid commissions.

182.     The IWPCA requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation, including "earned commissions." 820 ILCS 115/2.

183. Bruce was US Equipment's employee and US Equipment was Bruce's employer, as defined under the IWPCA. 820 ILCS 115/2.

184. As set forth in ¶16, the parties agreed Bruce was entitled to 50% of the value of any sales that were made at a rate above the listing price.

185. IEP1 was listed at $360,000 and sold by Bruce for $385,000.

186. Accordingly, Bruce is entitled to $12,500 or 50% of $25,000, which represents the difference between the list price and sale price.

187. Decision makers who knowingly permit violations of the IWPCA face individual liability for such violations. 820 ILCS 115/13.

188. Bradley is a "decision maker" as defined under the IWPCA, as he knew of Bruce's agreement setting forth the terms of his earned compensation.

189. Despite his knowledge, Bradley willfully denied Bruce the entirety of his earned and promised commissions, to wit, 50% of any item sold above listing.

190. By refusing to pay Bruce his earned and agreed to commissions, Bradley knowingly violated the IWPCA in breaching Defendants' agreement with Bruce and denying him final compensation to which he was lawfully entitled.

191. As a direct result of Bradley's violation of the IWPCA, Bruce was damaged in the form of being denied his final compensation.

**COUNT IX**
**IWPCA – FINAL PAYCHECK**
**PLAINTIFF BRUCE**
**AGAINST DEFENDANT US EQUIPMENT**

192. Paragraphs 1 though 85 are incorporated by reference.

193. Bruce brings Count IX under the IWPCA for US Equipment's failure to pay him his final paycheck.

194. The IWPCA requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation. 820 ILCS 115/2.

195. Bruce was US Equipment's employee and US Equipment was Bruce's employer, as defined under the IWPCA. 820 ILCS 115/2.

196. As set forth in ¶16, Defendants agreed to pay Bruce a base salary of $50,000 per year after the first six months of employment.

197. Based on Bruce's annual salary of $50,000, Bruce was entitled to approximately $3,346.15, bi-weekly.

198. Bruce was entitled to his final compensation on July 31, 2021, in the amount of $3,346.15.

199. US Equipment failed to pay Bruce his final paycheck, totaling approximately $3,346.15.

200. By refusing to pay Bruce his final paycheck, US Equipment breached its agreement with Bruce and denied him his wages, to which he was lawfully entitled.

201. US Equipment's failure to pay Bruce's final compensation is a violation of the IWPCA.

202. As a direct result of US Equipment's violation of the IWPCA, Bruce was damaged in the form of being denied his final compensation.

**COUNT X**
**IWPCA – FINAL PAYCHECK**
**PLAINTIFF BRUCE**
**AGAINST DEFENDANT BRADLEY**

203. Paragraphs 1 though 85 are incorporated by reference.

204. Bruce brings Count X under the IWPCA for Bradley's failure to pay him his final paycheck.

26

205. The IWPCA requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation. 820 ILCS 115/2.

206. Bruce was US Equipment's employee and US Equipment was Bruce's employer, as defined under the IWPCA. 820 ILCS 115/2.

207. As set forth in ¶16, Defendants agreed to pay Bruce a base salary of $50,000 per year after the first six months of employment.

208. Based on Bruce's annual salary of $50,000, Bruce was entitled to approximately $3,346.15 bi-weekly.

209. Bruce was entitled to his final compensation on July 31, 2021, in the amount of $3,346.15.

210. Decision makers who knowingly permit violations of the IWPCA face individual liability for such violations. 820 ILCS 115/13.

211. Bradley is a "decision maker" as defined under the IWPCA, as he knew of Bruce's agreement setting forth the terms of his earned compensation.

212. Despite his knowledge, Bradley willfully denied Bruce the entirety of his earned and promised wages, to wit, his final paycheck in the amount of approximately $3,346.15.

213. By refusing to pay Bruce his earned and agreed to wages, to wit, his final paycheck, Bradley knowingly violated the IWPCA in breaching Defendants' agreement with Bruce and denying him final compensation to which he was lawfully entitled.

214. As a direct result of Bradley's violation of the IWPCA, Bruce was damaged in the form of being denied his final compensation.

Wherefore, Plaintiffs, Jason Bruce, Christopher Russell, and Tyler McConnell, respectfully request that this Court grant them judgment against Defendants US Equipment LLC, and Simon Bradley, individually, awarding them:

27

A.     Payment to Bruce in the amount of his unpaid wages, to wit, his earned

       commissions;

B.     Payment to Russell in the amount of his unpaid wages, to wit, his earned

       commissions;

C.     Payment to McConnell in the amount of his unpaid wages, to wit, his earned

       commissions;

D.     Payment to Bruce in the amount of his unpaid wages, to wit, his final paycheck;

E.     Statutory damages equivalent to the maximum statutory monthly interest penalties

       available pursuant to 820 ILCS 115/14;

F.     Reasonable attorneys' fees and costs as required under 820 ILCS 115/15; and

G.     Such other and further relief as this Court deems appropriate and just.


Dated: September 28, 2022.                          By: */s/ Max Barack*
                                                    One of Plaintiffs' Attorneys


The Garfinkel Group, LLC
6252 N. Lincoln Avenue, Suite 200
Chicago, IL 60659
Haskell Garfinkel (IARDC No. 6274971)
haskell@garfinkelgroup.com
Max Barack (IARDC No. 6312302)
max@garfinkelgroup.com
Andrew Fullett (IARDC No. 6238490)
andrew@garfinkelgroup.com
(312) 736-7991